STATE OF NEBRASKA, APPELLEE, V. JOHN V. PAINTER, APPELLANT.
402 N.W.2d 677

Filed March 13, 1987.   No. 86-600.

Richard J. Epstein, for appellant.

Robert M. Spire, Attorney General, and Janie C. Castaneda, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

KRIVOSHA, C.J.

The appellant, John V. Painter, was charged in the county court for Sarpy County, Nebraska, with driving while intoxicated in violation of Neb. Rev. Stat. § 39-669.07 (Reissue 1984) and with refusing to submit to a chemical test in violation of Neb. Rev. Stat. § 39-669.08 (Reissue 1984). Following trial to a jury, Painter was convicted of both charges. Thereafter, the conviction for driving while intoxicated was enhanced to a third offense by reason of two previous convictions for driving while intoxicated. A presentence investigation report was ordered and received. On the charge of driving while intoxicated, Painter was sentenced to pay a fine of $500 and serve 6 months in jail, and he had his driver's license revoked for life. On the charge of refusing to submit to a chemical test, Painter was sentenced to pay a fine of $200 and serve 7 days in jail, and he had his license suspended for a period of 6 months. The county court further ordered that the jail sentences were to be served consecutively and the license suspensions were to run concurrently.

Painter appealed to the district court for Sarpy County, Nebraska. On appeal to the district court the convictions were affirmed. On July 11, 1986, the district court filed an opinion and order, which read in part as follows:

The County Court decision should be affirmed in all respects, *identical sentences imposed* in this Court, and costs in both courts taxed to the defendant-appellant.

IT IS, THEREFORE, CONSIDERED, ORDERED AND ADJUDGED the convictions and sentences imposed by the County Court are affirmed.

IT IS FURTHER ORDERED the defendant be, and hereby is, sentenced and committed to the County Jail for six (6) months on Count I and for seven (7) days on Count II, said sentences to be served *concurrently* . . . .
(Emphasis supplied.)

Thereafter, on July 14, 1986, the district court, apparently recognizing that its order of July 11 was internally inconsistent in that the judgment of the county court had ordered the jail sentences to be served consecutively and not concurrently, filed a document entitled "NUNC PRO TUNC ORDER." The order reads in part:

This matter comes on for hearing on the Court's own motion to correct the Opinion and Order signed and entered July 11, 1986. The Court, being fully advised in the premises, finds the sentences to confinement imposed by the County Court were to be served consecutively rather than concurrently, and the Court finds since there was no abuse of discretion on the part of the County Court in imposing the sentences, that that portion of the Opinion and Order affirming the convictions and sentences requiring the sentences to be served concurrently was erroneous.

The order then provides that the sentences are to be served consecutively rather than concurrently.

It is from these orders that Painter now appeals to this court, alleging as error that the evidence was insufficient to convict Painter of the driving while intoxicated charge and that he received ineffective assistance of counsel in the county court. He also claims that the district court should have modified the sentence regarding the suspension of Painter's license from a lifetime suspension to a suspension for 15 years and should not have entered an order nunc pro tunc once the sentence had been announced by the district court. We believe that the judgment and sentences ultimately imposed by the district court should be affirmed as modified herein.

A brief recitation of the facts is necessary to address at least

two of the assignments of error. The record discloses that on March 8, 1985, officers went to the scene of a personal injury accident. Painter had collided with a parked automobile while driving along a straight road seven to eight blocks from his home. The front end of his Volkswagen and the rear of the other vehicle were both severely damaged.

The first officer to arrive at the scene detected the odor of alcohol on and about Painter. Painter told the officer that he had consumed seven beers that evening. When the officer asked Painter to perform field sobriety tests, Painter began complaining about his legs. The officer testified that Painter was belligerent and that his speech was slow and slurred.

At the trial the officer, after testifying to appropriate foundation, including the fact that he had seen persons who were intoxicated, testified that in his opinion Painter was intoxicated to the point that it impaired his driving ability.

A second officer who had been at the scene also testified. His testimony was to the effect that following the accident Painter was taken to the hospital for treatment of injuries. The second officer said that, after first going to the police station to obtain appropriate forms for Painter's consent to submit to appropriate body fluid tests, he also went to the hospital. When he arrived, the officer testified, he detected the smell of alcohol on Painter. He testified that Painter was red in the face and that his eyes were bloodshot and watery. The officer testified that he read Painter the implied consent form and placed him under arrest. At that point Painter became violent and refused treatment from the nurses. Painter refused to submit to a blood test, citing religious reasons. He was unable to provide a urine sample. The officer testified that he later observed Painter crying. After testifying to appropriate foundation, the second officer also testified that in his opinion Painter was sufficiently under the influence of alcohol to impair his driving ability.

A third witness for the State was one of the paramedics who was called to the scene of the accident. He testified that Painter was belligerent, that he smelled of alcohol, that his eyes were bloodshot and his pupils sluggish, that his skin was sweaty, that his pulse was a little rapid, and that his blood pressure was normal and respiration a little fast, even though, under normal

conditions following an accident, his blood pressure should have been elevated. He testified that, based upon his knowledge and experience, the signs which he observed in Painter at the scene of the accident were consistent with the effects of alcohol.

Painter then called a research scientist and medical educator affiliated with Creighton University. He testified that the signs displayed by Painter were more indicative of trauma to the head rather than due to alcohol.

Turning to the contentions that the evidence was either insufficient or that Painter received ineffective assistance of counsel, we believe that the record in this case simply does not support Painter's claims. What we had in this case was a traditional conflict in the evidence. If the triers of fact believed the police officers and the paramedic, they could have reasonably concluded that Painter was operating his motor vehicle under the influence of alcohol and refused to take the required test. On the other hand, if they believed Painter's expert witness, they could find that his behavior was due to the trauma. After hearing all of the evidence, they obviously chose to believe the officers and the paramedic and to give little weight to the testimony of Painter's expert. That does not amount to error nor entitle this court to set aside the verdict. As we have frequently said: "A guilty verdict will not be reversed by this court on appeal unless the evidence is so lacking in probative force that it is insufficient as a matter of law." *State v. Taylor*, 221 Neb. 114, 119, 375 N.W.2d 610, 614 (1985). See, also, *State v. Warnke*, 221 Neb. 625, 380 N.W.2d 241 (1986). In a similar case, *State v. Borchardt, ante* p. 47, 59, 395 N.W.2d 551, 559-60 (1986), we said:

It . . . is a well-established axiom that in resolving a challenge to the sufficiency of the evidence, it is not the province of this court to resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or weigh the evidence. Such is for the trier of fact and must be sustained if, taking the view most favorable to the State, there is sufficient evidence to support it. [Citations omitted.] Stated more simply, it is not for this court to accept one version of a case over another; that is for the jury. [Citation omitted.]

Moreover, it is well established that after a jury has considered all of the evidence and returned a verdict of guilty, that verdict may not, as a matter of law, be set aside on appeal for insufficiency of the evidence if the evidence sustains some rational theory of guilt. [Citation omitted.] See, also, *State v. Baker, ante* p. 130, 395 N.W.2d 766 (1986); *State v. Halligan,* 222 Neb. 866, 387 N.W.2d 698 (1986); *State v. Blattner,* 222 Neb. 396, 383 N.W.2d 803 (1986). This record certainly would not support a claim that the evidence was insufficient as a matter of law.

While Painter suggests that the only evidence establishing his guilt was testimony that there was a smell of alcohol on his person, a reading of the record discloses that there was much more. To begin with, there was an unexplained accident with a parked car. Additionally, there was the testimony that there was the smell of alcohol on his person, that Painter conceded that he had consumed seven beers that evening, that his eyes were sluggish and bloodshot, that his speech was slow and slurred, and that he behaved in a belligerent manner. All of these are signs consistent with an individual who is operating under the influence of alcohol. The assignment must simply be overruled.

The claim that Painter received ineffective assistance of counsel must also be overruled. While the evidence does not disclose that Painter's counsel was ineffective and, quite to the contrary, discloses that he was as effective as one could be under the circumstances, we do not reach that question. We do not do so simply because the issue was not raised in the district court, even though counsel for Painter in the district court was not the same as counsel for Painter in the county court. That is to say, Painter did not raise the issue of ineffective assistance of counsel at the first opportunity. Painter simply did not present to the district court any contention regarding this alleged ineffective assistance of counsel, and raises the issue for the first time on appeal to this court. As we noted in *Haeffner v. State,* 220 Neb. 560, 564, 371 N.W.2d 658, 661 (1985):

In disposing of an appeal the Supreme Court considers only those errors which are properly assigned and presented to this court. [Citation omitted.] Where a cause has been appealed to the Supreme Court from a district

court exercising appellate jurisdiction, only issues properly presented to and passed upon by the district court may be raised on appeal to this court. In the absence of plain error, where an issue is raised for the first time in the Supreme Court, it will be disregarded inasmuch as the district court cannot commit error in resolving an issue never presented and submitted for disposition. [Citation omitted.]

Painter had an opportunity to raise that issue on appeal to the district court with new counsel and chose not to do so. We may, therefore, simply disregard that assignment.

That brings us, then, to the question of whether the district court is precluded from correcting its order and directing that the jail sentences be served consecutively rather than concurrently.

In support of his position that once the district court announces a sentence it cannot thereafter be modified, Painter cites to us the case of *State v. Cousins,* 208 Neb. 245, 302 N.W.2d 731 (1981), wherein we held that the district court may not change a sentence from concurrent to consecutive on its own motion by use of a nunc pro tunc order. While the holding of *Cousins* is correct, and a sentence validly imposed by a sentencing court takes effect from the time it is pronounced so that any subsequent sentence fixing a different term is a nullity, it has no application to the instant case. In *Cousins,* the district court was the *sentencing* court, while in this case the district court was an *appellate* court reviewing a sentence earlier imposed by the county court. That difference is significant.

Neb. Rev. Stat. § 29-613 (Reissue 1985) provides: "The district court shall hear and determine any cause brought by appeal from a county court . . . upon the record and may affirm, modify, or vacate the judgment or may remand the case to the county court for a new trial." It is clear that the district court is not sitting as the original court but, rather, as the appellate court.

As we recently noted in *State v. Daniels, ante* p. 264, 266, 397 N.W.2d 631, 633 (1986):

Looking at the role of the district court in appeals from county court, it is clear that the district court is considered

to be an intermediate court of appeals and not a trial court. *State v. Schroder*, 218 Neb. 860, 359 N.W.2d 799 (1984); *State v. Ledingham*, 217 Neb. 135, 347 N.W.2d 865 (1984).

See, also, *State v. Thompson, post* p. 922, 402 N.W.2d 271 (1987).

The significance of this is that, just as the Supreme Court may, on a motion for rehearing, timely modify its opinion, an intermediate appellate court may also timely modify its opinion. We believe the district court was in error in designating its order as a "nunc pro tunc order," in that the purpose of a nunc pro tunc order is to make the record reflect what in fact occurred and was erroneously recorded, and not to cause an order or judgment that was never made or rendered to be placed upon the record of the court. See *State v. Al-Hafeez*, 208 Neb. 681, 305 N.W.2d 379 (1981). In the instant case, the error was not committed by the scrivener, but was caused by a misstatement made by the judge. What the court entitles the order, however, is not controlling. One need only read the judgment and order entered by the district court on July 11 to recognize that what in fact the district court, sitting as an intermediate appellate court, intended to do was to impose the identical sentence which had been imposed by the county court and which admittedly provided that the jail sentences were to be served consecutively. In fact, had the district court ended its decision several paragraphs earlier, where it provided that "[t]he County Court decision should be affirmed in all respects, identical sentences imposed in this Court, and costs in both courts taxed to the defendant-appellant," no issue would be raised. It is only by reason of the fact that the court sought to expand its decision and included the word "concurrently" when referring to the jail sentences that any problem was created. There was simply no error in the district court's modifying its earlier order and eliminating the internal inconsistency which existed.

That leaves us, then, with the final question of whether the district court should have reduced the sentence. At the time that Painter was initially sentenced, the provisions of § 39-669.07 provided that upon conviction one's privileges to operate a

motor vehicle should be suspended for life. While the case was still on appeal to the district court, the Legislature amended the statute to provide that the suspension should be for a period of 15 years and not for life. In *State v. Randolph,* 186 Neb. 297, 301-02, 183 N.W.2d 225, 228 (1971), we said:

> While there is still some divergence of opinion among the states, we believe the better rule to be and we therefore hold that where a criminal statute is amended by mitigating the punishment, after the commission of a prohibited act but before final judgment, the punishment is that provided by the amendatory act unless the Legislature has specifically provided otherwise.

We then held in *State v. Randolph, supra,* that the sentences should be reduced to reflect the amended statute.

We likewise believe that where, as here, the matter is still pending before a court and, to that extent, has not become final and binding, the court should reduce the sentence to reflect the amendatory act. See *State v. Thompson, supra.* For that reason we believe that that portion of the sentence which suspended Painter's license for life on the conviction for driving while under the influence of alcohol should be vacated, and in lieu thereof Painter's privilege to operate a motor vehicle should be suspended for a period of 15 years.

In all other respects the judgment and orders of the district court affirming the convictions and order of the county court should be affirmed.

AFFIRMED AS MODIFIED.