STATE OF NEBRASKA, APPELLEE, V. MILTON L. MCPHAIL, APPELLANT.

421 N.W.2d 443

Filed April 1, 1988.   No. 87-280.

Roger C. Lott, for appellant.

Robert M. Spire, Attorney General, and Bernard L. Packett, for appellee.

BOSLAUGH, CAPORALE, and GRANT, JJ., and MULLEN, D.J., and COLWELL, D.J., Retired.

Colwell, D.J., Retired.

Defendant, Milton L. McPhail, appeals his convictions by a jury of the crimes of robbery, Neb. Rev. Stat. § 28-324(1) (Reissue 1985), and using a weapon to commit a felony, Neb. Rev. Stat. § 28-1205 (Reissue 1985). He assigns three errors: (1) denying defendant's pretrial motion to dismiss court-appointed counsel and to appoint substitute counsel; (2) denying his motion to dismiss for failure of the State to prove a prima facie case; and (3) failing to grant a new trial or, in the alternative, dismissing the case at the end of the evidence because the circumstantial evidence was insufficient to sustain a conviction against the defendant.

David Huebner, an engineering student at the University of Nebraska, testified that on the evening of September 15, 1986, he was studying while seated on the bedroom floor of his apartment at 1327 D Street, Lincoln, Nebraska. He heard the front door open and close. Hearing no other usual sounds, he looked toward the bedroom door and saw a black male, wearing a kerchief over his face and gloves, standing in the doorway. The intruder entered, said it was a stickup, and shoved and held Huebner's head against the wall. The intruder held a metal object against Huebner's head and asked where his money was. The intruder removed Huebner's wallet from a rear trouser pocket and handed it to a second man then in the room, who indicated that there were bank cards in the wallet. They bound Huebner's legs and arms and put him on the bed. The men asked Huebner for the access code number for one of the bank cards. Since there was confusion identifying the access codes with the three bank cards that were in the wallet, Huebner told the men to write the access codes that he gave them, which one of the men did by using a piece of Huebner's study graph paper taken from a table. Huebner was then gagged and warned not to move from the bed for 5 minutes. After hearing the men leave the building, Huebner hopped to a neighbor's apartment and telephoned the Lincoln Police Department, using the 911 emergency number, and reported the details of the robbery. Huebner testified the wallet contained between $5 and $10, three bank cards, and possibly a pay stub from Olsson Associates, where Huebner worked part time. Huebner could

not identify the robbers. He described the metal object held to his head during the robbery as "some type of a knife against my temple. . . . I believe it was metal. . . . [I]t was an ice pick or some type of knife . . . being used as a thrusting weapon . . . ."

The police dispatcher immediately broadcast the robbery details, including the bank card information. In response to the broadcast, Lt. John D. Packett, in a patrol car, drove past the FirsTier Bank, 13th and M Streets, on the way to the robbery scene, which was about eight blocks from the bank. Near the bank, Packett observed two black males entering the bank lobby, where there are automatic teller machines (ATMs). He parked the cruiser and entered the bank, where he observed the two men; one was using an ATM. Packett ordered them to face the wall; both men ran out of the building and separated. Packett and other responding police officers pursued the two men on foot. The man pursued by Packett was soon located and arrested in a parking lot about two blocks from the bank; he was identified as defendant, Milton McPhail. The other fleeing man, located and arrested nearby, was identified as Gregory McCoy.

At the time of defendant's arrest, personal searches revealed a knife in his rear trouser pocket and a pay stub from Olsson Associates bearing Huebner's name as employee found in a shirt pocket.

While pursuing McCoy from the bank, an officer observed McCoy discard an item, later recovered and identified as Huebner's wallet. Also recovered in a search of the pursuit route were an NBC Bank-In-The-Box card bearing the name of David L. Huebner and a piece of graph paper bearing numbers identified by Huebner as paper taken from his room and the access code numbers to his bank cards. The wallet contained three $1 bills.

Randall Pierce, a security guard on duty at the bank, was viewing the security monitors. He noticed a police officer in the lobby and locked on to the video camera in that area. When the two men ran from the bank, Pierce went to the ATM machine and found Huebner's card in the machine. The videotapes were included in the evidence.

Cynthia Werner testified that she was sitting in her car

parked near the front of the bank. She saw two black males run up to and enter the bank. Soon, the police arrived and the two men ran away.

In determining the sufficiency of the evidence to sustain a conviction, it is not the province of this court to resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or weigh the evidence. Such matters are for the finder of fact. The verdict must be sustained if, taking the view most favorable to the State, there is sufficient evidence to support it. *State v. Moore*, 226 Neb. 347, 411 N.W.2d 345 (1987).

## MOTION TO DISMISS COUNSEL

" ' "[T]he right of an indigent defendant to have counsel does not give him the right to be represented by counsel of his own choosing, and mere distrust of, or dissatisfaction with, appointed counsel is not enough to secure the appointment of substitute counsel. . . ." ' " *State v. Hoffman*, 224 Neb. 830, 835, 401 N.W.2d 683, 686 (1987).

When a defendant becomes dissatisfied with court-appointed counsel, unless he can show good cause to the court for the removal of counsel, his only alternative is to proceed pro se if he is competent to do so. *State v. Bratton,* 187 Neb. 460, 191 N.W.2d 612 (1971); *State v. Clark,* 216 Neb. 49, 342 N.W.2d 366 (1983).

The exercise of the right to the assistance of counsel is subject to the necessities of sound judicial administration. *State v. Richter*, 221 Neb. 487, 378 N.W.2d 175 (1985).

Prior to trial, defendant filed a motion to dismiss his court-appointed counsel and to appoint substitute counsel. At the hearing, it developed that defendant had requested his counsel to file motions for (1) dismissal for lack of evidence, (2) copies of police reports, (3) return of personal belongings held by the police, and (4) habeas corpus relief. The evidence was that defendant's counsel had filed a plea in abatement which was denied, that defendant did not understand the nature of a habeas corpus proceeding, and that the judge had informed defendant that as an alternative he could "hire your own lawyer or you can represent yourself."

The record shows nothing more than unfounded

dissatisfaction with appointed counsel. No good cause having been shown, there was no abuse of discretion, and the motion was properly denied.

## CIRCUMSTANTIAL EVIDENCE

Defendant was charged with two felonies occurring on September 15, 1986. Those charges were: count I, he "did forcibly, and by violence, or by putting in fear, take from the person of David Huebner money or property of value with the *intent to steal*"; and count II, he "did use a knife or other deadly weapon to commit a felony or did unlawfully possess a knife or other deadly weapon during the commission of a felony which may be prosecuted in a court of this state, to-wit: Robbery."

The second and third assignments are discussed together. "[C]ircumstantial evidence is sufficient to support a conviction if such evidence and reasonable inferences that may be drawn from the evidence establish defendant's guilt beyond a reasonable doubt." *State v. Hunt*, 224 Neb. 594, 596, 399 N.W.2d 806, 807 (1987).

It is the province of the Supreme Court, on appeal from a conviction, to refrain from resolving conflicts in the evidence and to sustain the judgment of conviction if, taking the view most favorable to the State, there is sufficient evidence to support the conviction. *State v. LynCook,* 227 Neb. 719, 419 N.W.2d 686 (1988).

Defendant denies his guilt and argues that he was a victim of his untimely arrival at the bank and his unexplained flight from the bank. He testified that upon his arrival on the corner beside FirsTier, he had met an acquaintance, McCoy. They decided to get a drink someplace, and defendant and McCoy decided to go into FirsTier, where defendant could withdraw some money from his savings account. At the entrance to FirsTier, McCoy found a bank card on the sidewalk, which McCoy attempted to use while defendant stood nearby giving him instructions on how to use the card in the machine.

The jury could find that defendant's explanation was overcome by the evidence, including Huebner's testimonial account of the robbery, his description of one of the robbers and of the property taken from him, and these circumstances: defendant's hasty arrival on foot at the bank within minutes

after the robbery that occurred a few blocks away; the attempted use in the ATM machine of Huebner's bank card; Huebner's pay stub from Olsson Associates found in defendant's pocket; the knife found in defendant's pocket; and the recovered items discarded by McCoy when fleeing, namely, Huebner's wallet, a card bearing Huebner's name, and the piece of graph paper taken from Huebner bearing his two bank card access code numbers.

A guilty verdict may not be set aside on appeal for insufficiency of the evidence where the evidence sustains some rational theory of guilt. *State v. Painter*, 224 Neb. 905, 402 N.W.2d 677 (1987).

The evidence, together with all of its inferences, strongly supports the jury verdict that defendant was guilty of both counts in the information beyond a reasonable doubt. There is no merit to any of defendant's assigned errors.

AFFIRMED.