falsehood. This result demonstrates that without a remedial procedure in place, hospital acknowledgments of paternity easily become a child support system that is unconcerned with actual paternity.[24]

McCormack, J., joins in this dissent.

_____

[24] See Ronald K. Henry, *The Innocent Third Party: Victims of Paternity Fraud*, 40 Fam. L.Q. 51 (2006).

_____

State of Nebraska, appellee, v. Yai Bol, also known as Daniel D. Matit, appellant.
___ N.W.2d ___

Filed May 16, 2014.    No. S-13-317.

1. **Constitutional Law: Search and Seizure: Investigative Stops: Arrests: Probable Cause.** The Fourth Amendment guarantees the right to be free of unreasonable search and seizure. This guarantee requires that an arrest be based on probable cause and limits investigatory stops to those made upon an articulable suspicion of criminal activity.

2. **Constitutional Law: Search and Seizure: Motions to Suppress: Appeal and Error.** In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, the appellate court reviews the trial court's findings for clear error. But whether those facts trigger or violate Fourth Amendment protections is a question of law that the appellate court reviews independently of the trial court's determination.

3. **Criminal Law: Investigative Stops: Motor Vehicles: Police Officers and Sheriffs.** A traffic stop requires only that the stopping officer have specific and articulable facts sufficient to give rise to a reasonable suspicion that a person has committed or is committing a crime.

4. **Investigative Stops: Motor Vehicles: Police Officers and Sheriffs: Probable Cause.** If an officer has probable cause to stop a traffic violator, the stop is objectively reasonable.

5. **Investigative Stops: Police Officers and Sheriffs: Probable Cause.** In determining whether there is reasonable suspicion for an officer to make an investigatory stop, the totality of the circumstances must be taken into account.

6. ____: ____: ____. The factual basis for an investigatory stop need not arise from the officer's personal observation, but may be supplied by information acquired from another person.

7. **Investigative Stops: Arrests: Police Officers and Sheriffs: Probable Cause.** Under what is commonly called the collective knowledge doctrine, an officer who does not have personal knowledge of the facts establishing probable cause

for the arrest or reasonable suspicion for the stop may nevertheless make an arrest or a stop if the officer is merely carrying out directions of another officer who does have probable cause or reasonable suspicion.

8. **Evidence: Appeal and Error.** In reviewing a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

9. **Prior Convictions: Proof.** In a proceeding to enhance punishment because of prior convictions, the State has the burden of proving such prior convictions by a preponderance of the evidence.

10. **Prior Convictions: Records: Proof.** The existence of a prior conviction and the identity of the accused as the person convicted may be shown by any competent evidence, including the oral testimony of the accused and duly authenticated records maintained by the courts or penal and custodial authorities.

11. **Drunk Driving: Prior Convictions: States.** Under Nebraska law, a prior conviction for purposes of a prosecution for driving under the influence includes any conviction under a law of another state if, at the time of the conviction, the offense would have been a violation of Nebraska's driving under the influence statutes.

12. **Drunk Driving: Prior Convictions: States: Proof.** Where prior convictions of driving under the influence in other states are alleged as grounds for sentence enhancement, the prosecutor is required to present a court-certified copy or an authenticated copy of a prior conviction in another state which shall be prima facie evidence of such prior conviction.

13. **Criminal Law: Judgments: Records.** A court has inherent power in a criminal case to correct its records to reflect the "truth," nunc pro tunc.

14. **Judgments: Records.** The purpose of an order nunc pro tunc is to correct a record which has been made so that it will truly record the action had, which through inadvertence or mistake was not truly recorded.

15. ____: ____. It is not the function of an order nunc pro tunc to change or revise a judgment or order, or to set aside a judgment actually rendered, or to render an order different from the one actually rendered, even though such order was not the order intended.

16. **Judgments.** Clerical errors may be corrected by an order nunc pro tunc, but judicial errors may not.

17. **Sentences: Appeal and Error.** An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.

18. ____: ____. Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed.

19.  **Sentences.** When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime.

Appeal from the District Court for Lancaster County: PAUL D. MERRITT, JR., Judge. Affirmed.

Dennis R. Keefe, Lancaster County Public Defender, Jennifer M. Houlden, and, on brief, Elizabeth D. Elliott, for appellant.

Jon Bruning, Attorney General, George R. Love, and Joel R. Rische, Senior Certified Law Student, for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, STEPHAN, MCCORMACK, MILLER-LERMAN, and CASSEL, JJ.

STEPHAN, J.

Yai Bol, also known as Daniel D. Matit, was convicted of one count of driving under the influence (DUI) with refusal of a chemical test and one count of driving during revocation. He appeals, challenging his convictions and sentences. Finding no error, we affirm the judgment of the district court.

## I. FACTS

An information filed in the district court for Lancaster County charged Matit, also known as Bol, with three counts. The charges arose out of a traffic stop that occurred on May 7, 2012. The information was later amended to charge Bol, also known as Matit, with two counts: DUI with refusal of a chemical test, three prior convictions, and driving during revocation or impoundment, first offense. Because the operative information uses the name "Bol," so will we in this opinion.

### 1. MOTION TO SUPPRESS

Bol filed a motion to suppress evidence gathered during the traffic stop, claiming police lacked probable cause to initiate the stop. Sgt. Benjamin Miller of the Lincoln Police Department testified at a hearing on the motion. Miller testified that he was on patrol in the area of 13th and E Streets in Lincoln, Nebraska, at about 1:20 a.m. on May 7, 2012. While traveling west, he saw a sport utility vehicle (SUV)

traveling east toward his patrol car begin to make a right turn at the intersection of 14th and E Streets, then erratically change direction, and then make another erratic turn, so that it ultimately made a complete U-turn and was heading west. The SUV did not use turn signals. After the SUV turned to head west, it almost immediately parked along the street. As Miller passed the SUV, he noticed it was parked almost 3 feet from the curb, which he believed was a violation of a city ordinance.

Miller decided to turn his car around and contact the driver of the SUV. As he did so, he saw Officer Anthony Gratz of the Lincoln Police Department turn onto E Street and drive toward the parked SUV. Miller asked Gratz to make contact with the driver of the SUV, because Gratz could get there more quickly. Gratz was thus the first officer to contact the SUV driver; Miller arrived shortly after Gratz.

After hearing this evidence, the district court denied Bol's motion to suppress. It found there was probable cause for police to initiate contact with the driver of the SUV based on Miller's observations of the erratic driving, the failure to use turn signals, and the manner in which the SUV was parked.

## 2. Trial

The case proceeded to a jury trial. At trial, Miller again explained what he observed prior to contacting the driver of the SUV and explained that he learned upon contacting the driver that he was Bol. Miller testified that he immediately noticed both that Bol had "bloodshot, watery eyes" and that there was an "odor of alcoholic beverage coming" from Bol and the SUV.

Bol agreed to participate in field sobriety tests, and Miller administered three: the horizontal gaze nystagmus test, the nine-step walk-and-turn test, and the one-leg stand test. Miller testified that Bol showed signs of impairment on each test. After Miller administered the tests, he placed Bol in his patrol car and asked him to take a preliminary breath test. Bol refused.

Miller then transported Bol to a detoxification center. At the center, Miller read Bol a postarrest chemical test

advisement form, which informed Bol that he was required to take a chemical test and that refusal to do so was a separate crime. Bol refused to submit to the chemical test. Miller testified that after Bol refused the chemical test, Miller read Bol his *Miranda* rights.[1] Miller further testified that based upon his experience and training, Bol was under the influence of alcohol.

After Miller's testimony, the State rested. Bol's counsel then moved for a directed verdict, which was denied. Counsel for the State then informed the court, "I guess there's an issue we have to take up as far — There's a trial stipulation that did not get into evidence." The court then acknowledged that there had been no evidence presented on the charge of driving under revocation and asked, "So, are we going to take out" that count? The State responded that it was asking for leave to reopen its case in chief to submit a written stipulation entered into by the parties on the revocation issue, which stipulation it had inadvertently failed to offer into evidence. Over Bol's objection, the court allowed the State to offer the written stipulation as an exhibit. The stipulation states that on May 7, 2012, Bol's driver's license had been administratively revoked.

Bol then testified in his own defense. He acknowledged that he also goes by the name "Daniel Matit." He stated that he performed the U-turn because he was looking for a parking spot and there was one available on the south side of the street. He thought the turn might have been erratic because his SUV was quite large and he was having trouble with its power steering. Bol testified that he parked the SUV close to the curb. He denied drinking on May 7, 2012, and testified that Miller gave him *Miranda* warnings prior to asking him to take a preliminary breath test. Bol stated that he refused that test and the later chemical test based on his understanding that anything he said or did could be used against him. Bol admitted that he was read the postarrest chemical test

---

[1] See *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

advisement and that he understood it was a crime not to take the test.

Gratz also testified and generally corroborated Miller's testimony about how the traffic stop occurred. He was unable to recall many details about the stop, however. After deliberation, the jury returned a verdict of guilty on both counts.

### 3. Sentencing

A sentence enhancement hearing was held on February 14, 2013. The State attempted to establish that Bol had three prior DUI convictions: one in Hall County, Nebraska, and two in Vermont. Bol objected to the Vermont convictions. After an enhancement hearing, the district court entered an order finding Bol had two prior DUI convictions, making the current conviction a third offense. Four days later, the court entered an order "nunc pro tunc," finding Bol had three prior DUI convictions, making the current conviction a fourth offense.

Bol was sentenced to 2 to 3 years' imprisonment for fourth-offense DUI with refusal of a chemical test and to 6 months' imprisonment for driving under revocation, the sentences to run concurrently. He filed this timely appeal.

## II. ASSIGNMENTS OF ERROR

Bol assigns (1) the district court abused its discretion in failing to grant the motion to suppress, (2) the district court abused its discretion by allowing the State to reopen its case after it rested, (3) the evidence adduced at trial was insufficient to sustain a conviction for DUI with refusal of a chemical test, (4) the district court erred in finding the Vermont convictions were valid prior convictions for purposes of sentence enhancement, (5) the district court erred in issuing the order nunc pro tunc and changing the number of prior convictions from two to three, and (6) the sentences imposed by the district court were excessive.

## III. ANALYSIS

### 1. Motion to Suppress

[1,2] The Fourth Amendment guarantees the right to be free of unreasonable search and seizure. This guarantee requires that

an arrest be based on probable cause and limits investigatory stops to those made upon an articulable suspicion of criminal activity.[2] In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, we apply a two-part standard of review. Regarding historical facts, we review the trial court's findings for clear error. But whether those facts trigger or violate Fourth Amendment protections is a question of law that we review independently of the trial court's determination.[3]

[3,4] Bol argues that the police lacked authority to contact him. A traffic stop requires only that the stopping officer have specific and articulable facts sufficient to give rise to a reasonable suspicion that a person has committed or is committing a crime.[4] In this context, if an officer has probable cause to stop a traffic violator, the stop is objectively reasonable.[5] The district court found there was probable cause for police to initiate contact with Bol, because Miller observed Bol's erratic driving, his failure to use turn signals, and the irregular manner in which the SUV was parked. These findings of fact are not clearly erroneous, and we agree they provided police with at least the reasonable suspicion necessary to initiate contact with Bol.

Bol contends the motion to suppress should have been granted, because Gratz, the first officer to make contact with him, did not personally testify about the facts justifying the stop. Bol contends that it is "unreasonable that the Court should rely upon an officer's explanation of what another officer considered appropriate grounds to initiate a traffic stop."[6] But even assuming this is so, that is not what happened in this case. Miller testified about the grounds he considered appropriate to initiate the stop. And Miller testified

---

[2] *State v. Wollam*, 280 Neb. 43, 783 N.W.2d 612 (2010).

[3] *Id*.

[4] *Id*.

[5] See *State v. Nolan*, 283 Neb. 50, 807 N.W.2d 520 (2012), *cert. denied* ___ U.S. ___, 133 S. Ct. 158, 184 L. Ed. 2d 78.

[6] Brief for appellant at 24.

that based on those grounds, he asked Gratz to initiate contact with Bol.

[5-7] In determining whether there is reasonable suspicion for an officer to make an investigatory stop, the totality of the circumstances must be taken into account.[7] The factual basis for a stop "'need not arise from the officer's personal observation, but may be supplied by information acquired from another person.'"[8] Under what is commonly called the collective knowledge doctrine, an officer who does not have personal knowledge of the facts establishing probable cause for the arrest or reasonable suspicion for the stop may nevertheless make an arrest or a stop if the officer is merely carrying out directions of another officer who does have probable cause or reasonable suspicion.[9] It is thus clear that the relevant analysis is whether the information Miller possessed justified the traffic stop, not what information Gratz had prior to initiating the stop. And as we have noted, the information Miller possessed supplied reasonable suspicion to justify the initial contact with Bol. The district court did not err in denying the motion to suppress.

## 2. State's Reopening of Its Case in Chief

After it rested, the State requested leave to reopen its case in chief in order to submit an exhibit that it had inadvertently failed to offer into evidence. The court allowed the State to do so. Bol asserts this was error.

In criminal prosecutions, the withdrawal of a rest in a trial on the merits is within the discretion of the trial court.[10] Bol contends that the district court abused its discretion because it

---

[7] See *State v. Wollam, supra* note 2.

[8] *Id*. at 50, 783 N.W.2d at 620, quoting *State v. Bowley*, 232 Neb. 771, 442 N.W.2d 215 (1989).

[9] *State v. Wollam, supra* note 2, citing *State v. Wegener*, 239 Neb. 946, 479 N.W.2d 783 (1992).

[10] *State v. Thomas*, 236 Neb. 84, 459 N.W.2d 204 (1990), *disapproved on other grounds, State v. Boslau*, 258 Neb. 39, 601 N.W.2d 769 (1999).

"abused its position as a neutral party and encouraged the State to reopen its case to present evidence."[11]

Bol relies heavily on *State v. Gray*.[12] In *Gray*, the defendant was found guilty of forgery. An enhancement hearing was held prior to his sentencing, and at that hearing, the State offered three exhibits as evidence of his prior convictions and then rested. The defendant was then granted a continuance. Before the hearing resumed, the court, on its own motion, notified all parties that the exhibits offered by the State were not sufficient to prove the prior convictions, because they contained no showing that the defendant had knowingly and intelligently waived counsel at the time he pled to the convictions. After receiving this notification from the court, the State sought to withdraw its rest to present additional evidence, and the court allowed it to do so. The defendant appealed, and the Nebraska Court of Appeals concluded the court had abused its discretion in allowing the State to withdraw its rest. It reasoned that the judge had "departed from his role as neutral fact finder" by informing the State that the evidence was insufficient and then allowing the State to produce additional evidence.[13]

Two other Nebraska cases are also of import. In *State v. Thomas*,[14] the defendant was charged with failure to appear and a jury trial was held. The State called two witnesses, offered certain exhibits, and then rested. The defendant moved for a directed verdict, contending the prosecution was barred by the statute of limitations, because the State had failed to produce evidence showing an exception to the statute of limitations applied. The State then moved for leave to withdraw its rest in order to adduce evidence on the issue, and the court allowed it to do so. On appeal, the defendant contended this was an abuse of discretion, because had the court not so acted, he would

---

[11] Brief for appellant at 26.

[12] *State v. Gray*, 8 Neb. App. 973, 606 N.W.2d 478 (2000), *overruled in part on other grounds, State v. Nelson*, 262 Neb. 896, 636 N.W.2d 620 (2001).

[13] *Id*. at 992, 606 N.W.2d at 495.

[14] *State v. Thomas, supra* note 10.

have been entitled to a directed verdict in his favor. We held the court did not abuse its discretion in allowing the State to withdraw its rest.

In *State v. McKay*,[15] the defendant was charged with assault by a confined person. After the State rested, the defendant moved for a directed verdict, arguing the State failed to prove that he was "legally" confined at the time of the assault and thus failed to prove an element of the offense. Although the court agreed with the defendant's legal argument, it granted the State's motion to withdraw its rest in order to present additional evidence on the issue. On appeal, the defendant contended this was an abuse of discretion, because the court had concluded the State had failed to prove its case prior to resting. The Court of Appeals found the facts in *McKay* were comparable to those in *Thomas*, not those in *Gray*. It reasoned that an abuse of discretion was found in *Gray* not because the State was allowed to fill in gaps in proof, but because the court failed to maintain the appearance of impartiality.

The instant case is also much more similar to *Thomas* than to *Gray*. It is true that without the evidence submitted by the State after being allowed to withdraw its rest, Bol could not have been convicted of driving during a period of revocation. However, *Thomas* makes it clear that withdrawal of rest to fill in gaps in proof is proper, as long as the court does not advocate for or advise the State to withdraw its rest. Here, Bol argues that the court alerted the State that it had failed to offer proof of the driving on revocation charge and thus acted improperly. But this is not what the record shows. It is clear that the State initiated discussion about the lack of proof on the revocation charge with the court, and it was only after the State had initiated the discussion that the court agreed there had been a lack of proof on the issue. On the facts before us, the court did not improperly abdicate its role as a neutral fact finder and did not abuse its discretion in allowing the State to withdraw its rest to put on additional evidence.

---

[15] *State v. McKay*, 15 Neb. App. 169, 723 N.W.2d 644 (2006).

### 3. Sufficiency of Evidence

[8] Bol argues the evidence was insufficient to support the jury's verdict. In reviewing a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact.[16] The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[17]

In his brief, Bol challenges the sufficiency of the evidence as it relates to both his conviction for DUI and his conviction for refusing to submit to a chemical test. But his arguments go to nothing more than the credibility of the witnesses or factual disputes between the witnesses. Viewed in the light most favorable to the State, the evidence is sufficient to support both convictions.

### 4. Prior Convictions

#### (a) Identity of Person Convicted

At the enhancement hearing, the State sought to establish that Bol had three prior DUI convictions: one in Hall County and two in Vermont. Bol does not dispute the Hall County conviction, but he contends on appeal that the State failed to prove that he was the defendant in the two Vermont prosecutions.

[9,10] In a proceeding to enhance punishment because of prior convictions, the State has the burden of proving such prior convictions by a preponderance of the evidence.[18] The existence of a prior conviction and the identity of the accused as the person convicted may be shown by any competent

---

[16] *State v. Watson*, 285 Neb. 497, 827 N.W.2d 507 (2013); *State v. McGee*, 282 Neb. 387, 803 N.W.2d 497 (2011).

[17] *State v. Wiedeman*, 286 Neb. 193, 835 N.W.2d 698 (2013); *State v. Eagle Bull*, 285 Neb. 369, 827 N.W.2d 466 (2013).

[18] *State v. Dixon*, 282 Neb. 274, 802 N.W.2d 866 (2011).

evidence, including the oral testimony of the accused and duly authenticated records maintained by the courts or penal and custodial authorities.[19]

[11,12] Under Nebraska law, a prior conviction for purposes of a DUI prosecution includes any conviction under a law of another state if, at the time of the conviction, the offense would have been a violation of Nebraska's DUI statutes.[20] Where prior DUI convictions in other states are alleged as grounds for DUI sentence enhancement, the prosecutor is required to present "a court-certified copy or an authenticated copy of a prior conviction in another state" which "shall be prima facie evidence of such prior conviction."[21] In the context of Nebraska's habitual criminal statute, we have held that an authenticated record establishing a prior conviction of a defendant with the same name is prima facie evidence sufficient to establish identity for the purpose of enhancing punishment and, in the absence of any denial or contradictory evidence, is sufficient to support a finding that the accused has been convicted prior thereto.[22] The same principle applies to proof of prior convictions under Nebraska's DUI statutes.

One of the Vermont convictions was in 2006. The 2006 Vermont conviction record identifies the defendant as "Yai Bol" and "Yai D. Bol," born on January 1, 1986. At the enhancement hearing, Bol testified that he was born on January 1, 1986. Thus, Bol has the same name and birth date as the person convicted of DUI in Vermont in 2006. This is sufficient to establish a prima facie showing that he is that person.

Bol contends that because he denied being the person convicted in Vermont in 2006, the burden shifted to the State to show he was that person. But we do not see any such denial in the record before us. At the enhancement hearing, Bol was not asked any questions about the 2006 Vermont conviction, and

[19] *State v. Thomas*, 268 Neb. 570, 685 N.W.2d 69 (2004).

[20] See Neb. Rev. Stat. § 60-6,197.02(1)(a)(i)(C) (Cum. Supp. 2012).

[21] § 60-6,197.02(2).

[22] *State v. Dixon*, *supra* note 18; *State v. Thomas*, *supra* note 19.

he made no reference to it in his testimony. Accordingly, the prima facie showing was not rebutted, and the evidence was sufficient to establish that Bol was the same person convicted of DUI in Vermont in 2006.

The other Vermont conviction occurred in 2009. The record from this conviction identifies the defendant at various places as "Daniel A. Matit," "Daniel D. Matit," and "Daniel Matit," born on January 1, 1989. It was established at trial that Bol uses the name "Daniel Matit." The 2009 conviction record indicates that the "Daniel Matit" convicted was married and living at a street address in Vergennes, Vermont. It also reflects that at the time of his arrest, he was driving a green Ford Explorer registered in Mississippi. At the enhancement hearing, Bol denied that he was convicted of DUI in Vermont in 2009. He stated that he had never been married. He acknowledged living in Vermont in 2009, but he testified that he never resided at the street address shown on the 2009 conviction record. On cross-examination, however, Bol admitted that in 2009, he owned a green Ford Explorer which was registered in Mississippi. Although there is a discrepancy between Bol's stated birth date of January 1, 1986, and the January 1, 1989, birth date reflected in the 2009 Vermont conviction records, the 1989 date is also reflected in the 2011 Hall County DUI conviction record of "Daniel D. Matit." At the enhancement hearing, Bol's counsel acknowledged that he was the person identified in the Hall County record.

There is also fingerprint evidence linking Bol to a person named "Yai Bol" who resided in Vermont in 2009. David Sobotka, a fingerprint examiner for the identification bureau of the Lincoln Police Department, testified that he compared fingerprint cards of "Yai Dau Bol" and "Daniel Deng Matit" which he obtained from the "IAFIS" database of the Federal Bureau of Investigation (FBI). The fingerprints did not match, and Sobotka testified that this meant that there is a "Daniel Matit" who is not the same person as the "Yai Bol" who provided the fingerprints.

But Sobotka also compared the fingerprints of "Yai Dau Bol" obtained from the FBI database to fingerprints from

"Daniel Deng Matit" taken by the Lincoln Police Department on May 7, 2012, and determined they were made by the same person. He also compared Bol's fingerprints from the FBI database and Matit's fingerprints taken by the Grand Island, Nebraska, police department in 2011 and determined they were made by the same person. Finally, Sobotka compared the same fingerprints of Bol from the FBI database with those of a "Yai Bol" who was arrested in Vermont on various charges in May 2009, approximately 2 months after the Vermont DUI conviction which is at issue. Again, the two sets of fingerprints matched. The date of birth of "Yai Bol" on the Vermont fingerprint card was January 1, 1986. Also, the photograph on the Vermont fingerprint card bears a striking resemblance to the photographs on the Lincoln and Grand Island fingerprint cards.

Thus, the record reflects (1) that Bol had the same name as the person convicted of DUI in Vermont in 2009, (2) that Bol lived in Vermont in 2009, (3) that Bol owned a green Ford Explorer registered in Mississippi which matches the description of the vehicle operated by the person who was convicted of DUI in Vermont in 2009, and (4) that the date of birth on the 2009 Vermont conviction matches the date of birth which Bol gave to Grand Island police when he was arrested for DUI in 2011. On this record, the State proved by a preponderance of the evidence that Bol is the same person who was convicted of DUI in Vermont in 2009.

For completeness, we note Bol's additional argument that the State should not be permitted to rely on the principle of collateral estoppel to argue that he is barred from challenging the use of the 2009 Vermont conviction to enhance his current conviction on the ground that it was used to enhance a DUI conviction in Lancaster County, Nebraska, in 2012. It is clear from the record that the court did not refer to the Lancaster County conviction or the use of the 2009 Vermont conviction to enhance that conviction in its finding that the current conviction is Bol's fourth offense. Therefore, we need not reach the collateral estoppel argument, because an appellate court is not obligated to engage in an analysis that is not necessary to

adjudicate the case and controversy before it.[23] We note, however, that we recently held that collateral estoppel principles do not apply at enhancement proceedings.[24]

### (b) Number of Prior Convictions

When entering a judgment of conviction for DUI, "the court shall, as a part of the judgment of conviction, make a finding on the record as to the number of the convicted person's prior convictions."[25] Following the enhancement hearing in this case, the district court entered an order finding that Bol "has two prior convictions for [DUI], making the current [DUI] conviction a third offense." Four days later, the court entered an order nunc pro tunc, in which it stated that "[d]ue to a scrivener's error," it was amending its prior order to read:

> Hav[ing] reviewed the evidence presented at the enhancement hearing held on February 14, 2013, including the prior convictions, fingerprint documents and testimony, the court finds that [Bol] has three prior convictions for [DUI] (i.e., Chittenden County, Vermont (2006); Addison County, Vermont (2009); and Hall County, Nebraska (2011)), making the current [DUI] conviction a fourth offense.

At the subsequent sentencing hearing, the court stated, "I truly do not understand how or why I typed and then signed [the order] showing a third offense rather than a fourth offense, because those findings were not and are not consistent with the evidence presented at the enhancement hearing." The court continued by noting that the order nunc pro tunc reflected the evidence from the enhancement hearing that Bol had three prior DUI convictions that could be used for enhancement purposes. The court also noted that it had determined Bol was represented by counsel or waived counsel at all critical stages in each of those cases. Bol argues that the court erred

---

[23] *State v. Pangborn*, 286 Neb. 363, 836 N.W.2d 790 (2013); *State v. Au*, 285 Neb. 797, 829 N.W.2d 695 (2013).

[24] *State v. Bruckner*, 287 Neb. 280, 842 N.W.2d 597 (2014).

[25] § 60-6,197.02(3).

in issuing the order nunc pro tunc changing the number of prior convictions.

[13-16] A court has inherent power in a criminal case to correct its records to reflect the "truth," nunc pro tunc.[26] The purpose of an order nunc pro tunc is to correct a record which has been made so that it will truly record the action had, which through inadvertence or mistake was not truly recorded.[27] It is not the function of an order nunc pro tunc to change or revise a judgment or order, or to set aside a judgment actually rendered, or to render an order different from the one actually rendered, even though such order was not the order intended.[28] Clerical errors may be corrected by an order nunc pro tunc, but judicial errors may not.[29]

In *State v. Painter*,[30] a district court sitting as an intermediate appellate court entered an order affirming what it characterized as concurrent sentences imposed by a county court. On its own motion, the district court subsequently entered an order nunc pro tunc stating that its reference to concurrent sentences was incorrect and that the sentences were to be served consecutively, as the county court had pronounced them. We determined that the district court erred in designating its second order as "nunc pro tunc," because "the error was not committed by the scrivener but was caused by a misstatement made by the judge."[31] But reasoning that "[w]hat the court entitles the order . . . is not controlling,"[32] we examined whether the court had authority to modify its earlier order and concluded that it did.

---

[26] *State v. Sims*, 277 Neb. 192, 761 N.W.2d 527 (2009); *State v. Kortum*, 176 Neb. 108, 125 N.W.2d 196 (1963).

[27] See, *Interstate Printing Co. v. Department of Revenue*, 236 Neb. 110, 459 N.W.2d 519 (1990); *Continental Oil Co. v. Harris*, 214 Neb. 422, 333 N.W.2d 921 (1983).

[28] *Id*.

[29] *Interstate Printing Co. v. Department of Revenue, supra* note 27. See, also, *State v. Painter*, 224 Neb. 905, 402 N.W.2d 677 (1987).

[30] *State v. Painter, supra* note 29.

[31] *Id*. at 912, 402 N.W.2d at 682.

[32] *Id*.

In this case, as in *Painter*, the error in question was a mis-statement by the judge, not an error by a scrivener. Thus, the second order which modified the court's finding with respect to the number of prior convictions cannot be properly termed an order nunc pro tunc. But if the court had jurisdiction and authority to enter the second order, its incorrect characterization as an order nunc pro tunc is of no consequence.[33]

Relying upon *State v. Cousins*,[34] Bol argues that the district court lacked authority to find that he had three prior DUI convictions after previously determining that he had only two. In *Cousins*, we held that a district court lacks authority to modify a valid criminal sentence after it is pronounced, even if the modification is for the purpose of imposing the sentence which the judge had originally intended to impose. We have consistently applied this principle in subsequent cases involving the pronouncement or imposition of criminal sentences.[35]

But these cases are not controlling here, because we are not dealing with a purported modification of a sentence. Instead, the district court's order finding there were two prior convictions was simply a finding of fact which, like other facts in the case, would subsequently be considered by the court in imposing a sentence. Nothing prevents a court from changing a factual finding while it still has jurisdiction over the case.

In *State v. Hausmann*,[36] we observed that "[j]udicial efficiency is served when any court . . . is given the opportunity to reconsider its own rulings, either to supplement its reasoning or correct its own mistakes." Here, the district court realized its own error prior to entry of final judgment when it still had jurisdiction over the case, and it acted appropriately to

---

[33] See *id*.

[34] *State v. Cousins*, 208 Neb. 245, 302 N.W.2d 731 (1981).

[35] See, *State v. Castillas*, 285 Neb. 174, 826 N.W.2d 255 (2013); *State v. Sims*, 277 Neb. 192, 761 N.W.2d 527 (2009); *State v. Schnabel*, 260 Neb. 618, 618 N.W.2d 699 (2000).

[36] *State v. Hausmann*, 277 Neb. 819, 827, 765 N.W.2d 219, 225 (2009).

correct its finding regarding the number of prior convictions to properly reflect the evidence before it. The fact that the court incorrectly labeled its corrective order "nunc pro tunc" does not invalidate it. We conclude that the district court did not err in modifying its prior finding to reflect that Bol had three prior DUI convictions instead of two.

### 5. Excessive Sentences

Bol contends the sentences imposed by the district court are excessive. DUI, aggravated fourth offense, is a Class III felony.[37] A Class III felony is punishable by a minimum of 1 year's imprisonment and a maximum of 20 years' imprisonment, a $25,000 fine, or both.[38] The court sentenced Bol to 2 to 3 years' imprisonment for the DUI conviction. Driving under revocation is a Class II misdemeanor.[39] A Class II misdemeanor is punishable by up to 6 months' imprisonment, a $1,000 fine, or both.[40] The court sentenced Bol to 6 months' imprisonment for the conviction of driving under revocation. Both sentences were thus within the statutory limits.

[17-19] An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.[41] Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed.[42] When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding

---

[37] Neb. Rev. Stat. § 60-6,197.03(8) (Cum. Supp. 2012).

[38] Neb. Rev. Stat. § 28-105 (Cum. Supp. 2012).

[39] Neb. Rev. Stat. § 60-4,108 (Cum. Supp. 2012).

[40] Neb. Rev. Stat. § 28-106 (Cum. Supp. 2012).

[41] *State v. McGuire*, 286 Neb. 494, 837 N.W.2d 767 (2013); *State v. Dixon*, 286 Neb. 334, 837 N.W.2d 496 (2013).

[42] *State v. Dixon, supra* note 41.

conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime.[43]

The presentence report indicates that Bol has filed two other appeals. One, decided by this court, involved a conviction for DUI, fourth offense, a Class III felony.[44] The second was decided by the Court of Appeals and involved a conviction for criminal impersonation, a Class IV felony.[45] Bol's criminal history also includes a DUI in Vermont in 2005, for which he was incarcerated for 6 to 11 months; a DUI in Texas in 2008, disposition unknown; possession of cocaine and providing false information to a police officer in Vermont in 2009, for which he was fined $5,500 and ordered to serve 1½ to 2½ years in prison, but the sentences were suspended; a DUI and refusal to submit to a chemical test in Hall County in 2011, for which he was fined and placed on probation; and a third-offense DUI in Lancaster County in 2011, for which he was sent to jail for 120 days. He also was convicted of third degree domestic assault in Hall County in 2012 and was sentenced to 60 days in jail.

The sentences imposed by the trial court were within the statutory limits. Based on Bol's criminal record and after considering the relevant sentencing factors, we conclude the district court did not abuse its discretion in imposing the sentences.

## IV. CONCLUSION

For the reasons discussed, we affirm the judgment of the district court.

Affirmed.

---

[43] *State v. McGuire, supra* note 41; *State v. Dixon, supra* note 41.

[44] *State v. Matit, post* p. 163, ___ N.W.2d ___ (2014).

[45] *State v. Bol*, 21 Neb. App. 931, ___ N.W.2d ___ (2014).