designated as an expert. We further conclude that the Court of Appeals erred in holding that this error was not prejudicial. Finding prejudicial error, we reverse the judgment of the Court of Appeals and remand this matter with directions that it vacate the district court's judgment and remand this cause to the district court for a new trial.

Reversed and remanded with directions.

Stephan, J., participating on briefs.
Wright, Miller-Lerman, and Cassel, JJ., not participating.

---

State of Nebraska, appellee, v.
Doan Q. Au, appellant.
___ N.W.2d ___

Filed May 3, 2013.    No. S-12-040.

1. **Constitutional Law: Search and Seizure: Motions to Suppress: Appeal and Error.** In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination.
2. **Statutes.** The interpretation of a statute presents a question of law.
3. **Investigative Stops: Motor Vehicles: Probable Cause.** A traffic violation, no matter how minor, creates probable cause to stop the driver of a vehicle.
4. **Police Officers and Sheriffs: Probable Cause.** Probable cause merely requires that the facts available to the officer would cause a reasonably cautious person to believe that the suspect has committed an offense; it does not demand any showing that this belief be correct or more likely true than false.
5. **Statutes.** Statutory language is to be given its plain and ordinary meaning.
6. ____. Absent a statutory indication to the contrary, words in a statute will be given their ordinary meaning.
7. **Words and Phrases.** "Practicable" generally means capable of being done, effected, or put into practice with the available means, i.e., feasible.
8. **Probable Cause: Words and Phrases.** Reasonable suspicion entails some minimal level of objective justification for detention, something more than an inchoate and unparticularized hunch, but less than the level of suspicion required for probable cause.
9. **Constitutional Law: Criminal Law: Police Officers and Sheriffs: Investigative Stops: Probable Cause.** Under the Fourth Amendment, a policeman who lacks probable cause but whose observations lead him reasonably to suspect that a particular person has committed, is committing, or is about to commit a crime,

may detain that person briefly in order to investigate the circumstances that provoke suspicion.

10. **Investigative Stops.** An investigatory stop and resulting inquiry must be reasonably related in scope to the justification for their initiation.

11. **Motor Vehicles: Investigative Stops: Probable Cause.** Observation of a vehicle weaving in its own lane of traffic provides an articulable basis or reasonable suspicion for stopping a vehicle for investigation regarding the driver's condition.

12. **Appeal and Error.** An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.

Appeal from the District Court for Douglas County: W. Mark Ashford, Judge. Reversed and remanded for further proceedings.

William J. O'Brien for appellant.

Jon Bruning, Attorney General, and Nathan A. Liss for appellee.

Heavican, C.J., Wright, Connolly, Stephan, Miller-Lerman, and Cassel, JJ.

Cassel, J.

## INTRODUCTION

In this appeal, we first determine whether evidence that a vehicle momentarily touched or crossed a lane divider line, without more, established a statutory violation and thereby provided probable cause for a traffic stop. It did not, because the controlling statute requires that a vehicle remain in a single lane only "as nearly as practicable." Second, because the arresting officer admitted that this "happens all the time" and failed to distinguish how this case differed from normal behavior, there was no reasonable suspicion of criminal activity sufficient to support an investigatory stop. We reverse the judgment of the district court and remand the cause for further proceedings.

## BACKGROUND

On September 22, 2010, Officer Kristopher Peterson of the Douglas County Sheriff's Department pulled over a vehicle with out-of-state license plates heading eastbound on

Interstate 80 because it momentarily crossed over the divider line between the two eastbound lanes. Doan Q. Au was a passenger in the vehicle. Based upon the suspicions Peterson developed while issuing a warning ticket for the alleged traffic violation, he deployed a drug detection dog, searched the vehicle, and ultimately discovered numerous packets of cocaine in a hidden compartment in the trunk.

Au was charged with unlawful possession with intent to deliver a controlled substance and entered a plea of not guilty. Prior to trial, Au filed a motion to suppress any and all evidence that resulted from the traffic stop and search of the vehicle.

At the suppression hearing, the district court received evidence and heard Peterson's testimony, which established the events that transpired immediately before the initial traffic stop and leading up to Au's arrest. Peterson testified that he initiated the traffic stop at 10:08 p.m. after he observed that most of the vehicle's "left, or driver's side, tires briefly, briefly crossed over the white divider line, crossing into the inside lane for several hundred feet." He twice observed the vehicle touch the divider line in this manner. Peterson made this observation immediately after the vehicle crossed a diagonal seam or "break in the road" which made the pavement a "little bit" uneven and on a stretch of road that curved slightly to the left. Peterson admitted that it was "more difficult" for a driver to maintain his lane under such conditions.

The district court received video footage from Peterson's cruiser, showing the traffic stop and the alleged traffic offense that precipitated it, all occurring after nightfall. The video depicts the subject vehicle touching and partially crossing the divider line with its left tires in a manner and under conditions consistent with Peterson's testimony. Additionally, the video shows another vehicle preparing to merge onto the Interstate into the subject vehicle's lane just prior to the second time that it deviated from its lane and away from the merging traffic.

Referring to vehicles touching the lane divider line, Peterson admitted that "it happens commonly" and that it "happens

quite a bit." He testified that when a vehicle fails to maintain its lane, it could indicate that the driver is impaired by an illegal substance or alcohol, or that the driver is "overly tired." Peterson declined to describe what he observed in the instant case as erratic driving, but he opined that it was "definitely impaired in some manner." Peterson testified that it was his "general practice" to stop vehicles for crossing the centerline "[w]hen practical . . . ." He stated that even though such behavior is a common occurrence, it raises safety concerns for the driver of the subject vehicle and other drivers; but he did not explain how touching or crossing the line without any nearby traffic would affect safety.

Later, Peterson admitted that it "happens all the time by people [who] are driving [and who] aren't under the influence or fatigued." In the instant case, the driver of the vehicle had committed no other traffic violations aside from crossing the centerline, and there were no other vehicles in the immediate vicinity.

Because of the resolution of this appeal, we only briefly summarize the events that followed. After stopping the vehicle, Peterson questioned the driver and Au separately. After giving the driver a warning ticket, Peterson did not allow the parties to leave and deployed a drug detection dog. The dog alerted and indicated. Upon searching the vehicle, Peterson discovered cocaine. The driver and Au were arrested.

Based upon Peterson's testimony, the district court overruled Au's motion to suppress. The court stated:

> The . . . vehicle, as observed by [Peterson], did cross the center line on more than one occasion, which would be sufficient to create probable cause to stop said vehicle and make contact with the driver.
>
> In the present case, [Peterson] did have objective articulable probable cause that a violation had occurred and therefore the stop of the vehicle was lawful.

The case proceeded to a stipulated bench trial. During the trial, Au renewed his motion to suppress. The district court treated the renewal of the motion to suppress as though it were made at the commencement of the trial and overruled the motion.

The district court found Au guilty of unlawful possession with intent to deliver a controlled substance, a Class IC felony, and sentenced him to 10 to 12 years' imprisonment.

Au filed a timely appeal. Pursuant to statutory authority, we moved this case to our docket.[1]

## ASSIGNMENTS OF ERROR

Au assigns, restated, that the district court erred in overruling his motion to suppress, because Peterson lacked (1) a constitutionally sufficient basis for stopping the vehicle in which Au was a passenger and (2) a reasonable suspicion to detain Au after the initial purpose of the traffic stop was completed. We reach only the first of these two issues.

## STANDARD OF REVIEW

[1] In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination.[2]

[2] The interpretation of a statute presents a question of law.[3]

## ANALYSIS

*No Probable Cause for Traffic Stop.*

[3,4] In ruling upon Au's motion to suppress, the district court relied upon the well-established principle that a traffic violation, no matter how minor, creates probable cause to stop the driver of a vehicle.[4] Probable cause merely requires that the facts available to the officer would cause a reasonably cautious person to believe that the suspect has committed an offense;

---

[1] Neb. Rev. Stat. § 24-1106(3) (Reissue 2008).

[2] *State v. Nolan*, 283 Neb. 50, 807 N.W.2d 520 (2012), *cert. denied* ___ U.S. ___, 133 S. Ct. 158, 184 L. Ed. 2d 78.

[3] *State v. McCarthy*, 284 Neb. 572, 822 N.W.2d 386 (2012).

[4] *State v. Magallanes*, 284 Neb. 871, 824 N.W.2d 696 (2012).

it does not demand any showing that this belief be correct or more likely true than false.[5]

The district court viewed any crossing of a lane divider as a traffic violation. The court reasoned, "The . . . vehicle . . . did cross the center line on more than one occasion, which would be sufficient to create probable cause to stop said vehicle and make contact with the driver." This reasoning mirrored Peterson's explanation. Peterson testified that he ordinarily pulls a car over when the car touches the lane divider line. The district court's statutory interpretation affords no consideration to the surrounding circumstances. The controlling statute clearly mandates otherwise.

[5,6] We first focus on the exact language of the statute and the principles that govern our reading of it. Whenever a roadway has been divided into two or more clearly marked lanes for traffic, Neb. Rev. Stat. § 60-6,139(1) (Reissue 2010) requires that "[a] vehicle shall be driven as nearly as practicable within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety." Statutory language is to be given its plain and ordinary meaning.[6] A similar rule applies to specific words within a statute. Absent a statutory indication to the contrary, words in a statute will be given their ordinary meaning.[7] We interpret this statute without deference to the meaning given to it by the district court.

Although other statutes strictly declare particular actions to be traffic violations, § 60-6,139(1) employs language expressly requiring consideration of the surrounding circumstances. We recently held that a vehicle crossing a fog line and driving on the shoulder of the highway, albeit very briefly, violated the statute prohibiting driving on a shoulder.[8] But Au correctly argues that the language of § 60-6,139(1) is significantly

---

[5] *State v. Eberly*, 271 Neb. 893, 716 N.W.2d 671 (2006).

[6] *State v. Magallanes, supra* note 4.

[7] *State v. Parks*, 282 Neb. 454, 803 N.W.2d 761 (2011).

[8] See *State v. Magallanes, supra* note 4.

different in that it merely requires that a vehicle be driven within a single lane "as nearly as practicable."

[7] The words "as nearly as practicable" invoke a standard inconsistent with the district court's interpretation. "Practicable" generally means capable of being done, effected, or put into practice with the available means, i.e., feasible.[9] It has also been described as meaning possible or feasible, able to be done, or capable of being put into practice.[10] A feasibility standard requires that the surrounding circumstances be considered. Further, the words "as nearly as" convey that the statutory standard does not require absolute adherence to a feasibility requirement, but, rather, something less rigorous.

Peterson's testimony failed to establish that the vehicle was not driven "as nearly as practicable" in the right-hand lane. He admitted that just before crossing the line, the vehicle crossed a "break in the road," and that the pavement there was a "little bit" uneven. He also acknowledged that the vehicle was traveling around a curve and that it is "more difficult" to maintain one's lane when driving around a curve as opposed to going straight. But he failed to explain how, in the light of these circumstances, it was still feasible for the vehicle to not touch or slightly cross the line. Instead, he evidently assumed that any touching or crossing of the lane divider line necessarily constituted a traffic infraction.

Moreover, Peterson's testimony showed that touching or crossing lane divider lines was a common occurrence, which clearly bears on the practicability of not doing so. He admitted that in the normal course of driving on the Interstate, vehicles often touch the left- or right-hand lines and that "it happens commonly." Nonetheless, he insisted that he would stop any such vehicle both because the driver would have committed a violation and in order to protect the safety of the driver and other drivers. While we discuss the matter of driver safety below, at this juncture, we consider only whether touching or

---

[9] Webster's Third New International Dictionary of the English Language, Unabridged 1780 (1993).

[10] Id.

crossing the divider line violated the statute. And we conclude that it did not.

The district court erred in treating the mere touching or crossing of a lane divider line as a traffic violation. Consequently, the court erred in determining that probable cause existed for the stop. But our inquiry does not end here. We must also consider whether this was a permissible investigatory stop.

### No Reasonable Suspicion of Criminal Activity.

[8] The State also argues that based on Peterson's observations, he had a reasonable suspicion of criminal activity and another legal standard permitted the traffic stop. Reasonable suspicion entails some minimal level of objective justification for detention, something more than an inchoate and unparticularized hunch, but less than the level of suspicion required for probable cause.[11] Au responds that whether the standard is probable cause or reasonable suspicion, the circumstances in the instant case failed to rise to that level.

Under our standard of review, we review the district court's factual findings for clear error but review the determination of reasonable suspicion independently. Upon our independent review, we find ourselves confronted by the rare case where the law enforcement officer's testimony completely undermines the existence of a reasonable suspicion of criminal activity.

[9,10] The U.S. Supreme Court has long held that under the Fourth Amendment, a police officer who lacks probable cause but whose observations lead him reasonably to suspect that a particular person has committed, is committing, or is about to commit a crime, may detain that person briefly in order to investigate the circumstances that provoke suspicion.[12] The stop and inquiry must be reasonably related in scope to the

---

[11] *State v. Nelson*, 282 Neb. 767, 807 N.W.2d 769 (2011).

[12] See, *Berkemer v. McCarty*, 468 U.S. 420, 104 S. Ct. 3138, 82 L. Ed. 2d 317 (1984); *United States v. Brignoni-Ponce*, 422 U.S. 873, 95 S. Ct. 2574, 45 L. Ed. 2d 607 (1975).

justification for their initiation.[13] Typically, this means that the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions.[14]

[11] In cases involving impaired drivers, we have long held that observation of a vehicle weaving in its own lane of traffic provides an articulable basis or reasonable suspicion for stopping a vehicle for investigation regarding the driver's condition.[15] It was sufficient where the officer observed the motorist to weave only twice, once sharply from right to left within the lane and a second time a little over 1 mile later.[16] We upheld another investigatory stop where the driver gradually moved to the left toward a center island, then to the right to the right-hand lane line, then back to the left toward the center island, and finally back right to the lane divider line, even though the vehicle never touched the center island or crossed the lane divider line.[17] Another investigatory stop addressed a driver who weaved three or four times from the centerline of an extra-wide northbound lane into those areas which were free of parked cars along the curb.[18] If weaving within a lane is sufficient to support a reasonable suspicion of impaired driving, instances involving touching or crossing a lane divider line would frequently provide a similar reasonable suspicion of impairment. But in each of those cases involving weaving vehicles, we were not confronted by testimony admitting that the observed behavior "happens all the time" with unimpaired drivers.

The only evidence of a reasonable suspicion is Peterson's observation of the vehicle's crossing the white lane divider line and his bare assertion that he suspected impairment.

---

[13] See *id*.

[14] *Berkemer v. McCarty, supra* note 12.

[15] See *State v. Thomte*, 226 Neb. 659, 413 N.W.2d 916 (1987).

[16] *Id*.

[17] *State v. Dail*, 228 Neb. 653, 424 N.W.2d 99 (1988).

[18] *State v. Beerbohm*, 229 Neb. 439, 427 N.W.2d 75 (1988) (superseded by statute on other grounds as stated in *Smith v. State Dept. of Motor Vehicles*, 248 Neb. 360, 535 N.W.2d 694 (1995)).

The vehicle's left tires briefly crossed over the white divider line, crossing into the left-hand lane for several hundred feet. Peterson claimed that the driver might have been impaired, "whether it's with some type of illegal substance, alcohol, or it could just mean that the driver [was] impaired by being overly tired."

But Peterson's own testimony demolished his claim that he had a reasonable suspicion that the driver was intoxicated or fatigued. On cross-examination referring to vehicles touching the lane divider line, he admitted that "this happens quite a bit" and that it "happens all the time by people [who] are driving [and who] aren't under the influence or fatigued." He did not attempt to explain how the circumstances in the case before us differed from what "happens all the time" with unimpaired drivers.

We also consider the other circumstances—the break in the road with the resulting uneven pavement, the curve in the highway, the merging vehicle depicted in the video recording just prior to the second deviation from the lane, the likelihood of an out-of-state driver's being unfamiliar with the particular section of road, and the nighttime darkness. When we subtract all of these circumstances from the bare touching or crossing of the lane divider line, all that remains is an inchoate and unparticularized hunch. That is not enough.

We emphasize that this is not the typical case where a law enforcement officer testifies to evidence of impairment sufficient to establish a reasonable suspicion of criminal activity. Here, unlike the usual case, Peterson both admitted that the driver's conduct "happens all the time" by unimpaired drivers and failed to testify to any circumstances distinguishing this event from the norm. Thus, we conclude that the record does not establish a reasonable suspicion of criminal activity sufficient to justify the traffic stop.

*Further Detention After Traffic*
*Stop Was Completed.*

[12] Because we conclude that the traffic stop was not supported by either probable cause or a reasonable suspicion of criminal activity, we do not reach Au's second assignment of

error. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.[19]

## CONCLUSION

Section 60-6,139(1) requires a motor vehicle operator to remain within a traffic lane only "as nearly as practicable." Contrary to the district court's implicit interpretation, mere touching or crossing of a lane divider line, without more, is not a violation of § 60-6,139(1). Because the State failed to establish the violation of a statute, it failed to establish probable cause to justify the traffic stop.

The State also failed to establish that the officer had a reasonable suspicion of criminal activity sufficient to justify an investigatory stop. He admitted that minor touching or crossing of lane divider lines "happens all the time" by unimpaired drivers. He failed to point to any other circumstance supporting a reasonable suspicion of an impaired driver.

Because the traffic stop was not supported by either probable cause or a reasonable suspicion of criminal activity, the district court erred in failing to sustain Au's motion to suppress the evidence resulting from the traffic stop. We therefore reverse the judgment and remand the cause for further proceedings consistent with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.

McCORMACK, J., participating on briefs.

---

[19] *State v. Jiminez*, 283 Neb. 95, 808 N.W.2d 352 (2012).