IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

STATE V. FOSTER

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,
V.
LORRAINE FOSTER, APPELLANT.

Filed August 19, 2014.    No. A-13-1026.

Appeal from the District Court for Scotts Bluff County: RANDALL L. LIPPSTREU, Judge. Affirmed.

Jon Bruning, Attorney General, and Kimberly A. Klein for appellee.

Richard L. DeForge, Deputy Scotts Bluff County Public Defender, for appellant.

MOORE, PIRTLE, and RIEDMANN, Judges.

RIEDMANN, Judge.

## I. INTRODUCTION

Lorraine Foster appeals her conviction and sentence for possession with intent to distribute more than 28 grams but less than 140 grams of methamphetamine, a Class IC felony offense. Foster asserts that the district court erred in overruling her motion to suppress and in imposing an excessive sentence. Finding no merit to Foster's assigned errors, we affirm.

## II. BACKGROUND

Shortly before midnight on April 13, 2013, a Nebraska State Patrol dispatcher received a telephone call regarding an impending drug transaction. The caller provided his telephone number and identified himself. He reported that his sister, "Lorraina," and her friend, "Tina," had left Kimball, Nebraska, about 40 minutes prior in a black Escalade with Colorado license plates. He stated that they were "really messed up" and were on their way to Scottsbluff, Nebraska, to either obtain or deliver drugs. Kimball is approximately 45 miles south of Scottsbluff. The dispatcher immediately notified the Scottsbluff Police Department of this information.

Officer William Howton received the information from the dispatcher around midnight and notified Officer Matthew Broderick of the same. Shortly thereafter, Officer Broderick observed a black Lincoln Navigator with Colorado license plates and two female occupants in the area of East 12th Street and 16th Avenue in Scottsbluff. According to the officers, a Lincoln Navigator is similar to a Cadillac Escalade. Officer Broderick observed the Navigator for a period of time but did not observe any traffic violations and did not make contact with the vehicle at that time. He obtained the vehicle's license plate number and advised Officer Howton regarding its location.

Officer Howton proceeded to that area and soon observed a black Lincoln Navigator with the same Colorado license plate observed by Officer Broderick. He followed the Navigator for a short time until it pulled into a driveway on East 9th Street. Officer Howton continued on his way and did not make contact with the vehicle at that time. However, he returned to the area a few minutes later and observed the Navigator once again traveling eastbound on East 9th Street. He followed the vehicle and soon observed it turn south onto 13th Avenue without activating its turn signal.

Officer Howton initiated a traffic stop based on the purported turn signal violation, and Officer Broderick responded to assist. The driver of the Navigator was identified as Tina Venzor; the passenger was identified as Lorraine Foster. They reported that they had come from Kimball and had just arrived in Scottsbluff to visit family. Officer Howton conducted a routine records check and learned that Venzor's driver's license had been suspended in Wyoming. He issued Venzor a citation for having no operator's license and a warning for the turn signal violation. He returned their documentation and advised them that they were free to leave, but then asked for permission to search the vehicle. Both occupants consented to the search.

Once consent to search the vehicle was obtained, the officers instructed the occupants to exit the vehicle and step back toward the cruiser. Both occupants carried their purses with them as they exited the vehicle. Officer Howton then sought and obtained consent to search Venzor's purse. As Officer Howton was searching Venzor's purse, Officer Broderick asked Foster whether there was anything in her purse that "we need to know about." Foster said "no," then placed her purse on the hood of the cruiser and began to open it for Officer Broderick. At that point, Officer Howton discovered contraband in Venzor's purse, including a glass pipe with residue that appeared to be methamphetamine, a black pouch that contained a digital scale, and a small baggie with an "8-ball logo" on it.

Upon locating these items in Venzor's purse, Officer Howton placed her in handcuffs and directed Officer Broderick to place Foster in handcuffs even though Foster's purse had not yet been searched. As Foster was being handcuffed, Officer Broderick asked her if there was anything illegal in her purse, to which Foster responded, "I'm not going to lie." After further inquiry by Officer Broderick, Foster stated that there was methamphetamine in her purse.

Foster's purse was subsequently searched, upon which officers located a "Crown Royal bag" that contained several Ziploc baggies with various amounts of suspected methamphetamine weighing a total of approximately 38 grams. They also located a digital scale and numerous empty baggies including 10 medium Ziploc baggies and 30 small Ziploc baggies with an 8-ball logo. Officer Howton explained that the term "8-ball" is commonly used to describe a quantity of narcotics.

Foster was charged with possession with intent to distribute more than 28 grams but less than 140 grams of methamphetamine. Prior to trial, she filed a motion to suppress "[a]ny and all observations made of her person and her actions, including statements made by [Foster], or anything relating to the traffic stop" on the basis that "the officer did not have probable cause to arrest [Foster] and such arrest was made without legal justification and was a violation of [Foster's] right to be free of unreasonable searches and seizures." Venzor filed a motion to suppress in the case pending against her, as well.

A consolidated suppression hearing was held to address the motions to suppress filed by Foster and Venzor. After opening statements were given, the district court asked counsel to identify the issues being raised in the motions to suppress. The following exchange occurred:

> THE COURT: Okay. Well, let me very quick questions [sic] because suppression motions are general, what specifically is being raised by the defendant, it's an unlawful traffic stop?
>
> [Counsel for Venzor]: Yes.
>
> [Counsel for Foster]: Statement made by my defendant before she was Mirandized.
>
> THE COURT: Okay. So unlawful traffic stop and then statements, either voluntary or before Mirandized?
>
> [Counsel for Venzor]: That's correct. They were in custody a fair amount of time before they were Mirandized.

The evidence adduced at the suppression hearing was consistent with the facts stated above. The district court denied Foster's motion to suppress, finding that the traffic stop was valid based on the officer's observation of a turn signal violation. It did not make any determination as to the statements, the search, or the arrest.

The case proceeded to a jury trial, during which Foster renewed her objection to the evidence obtained as a result of the traffic stop, claiming that "the stop was improper." The jury found Foster guilty of possession with intent to distribute at least 28 grams but less than 140 grams of methamphetamine. The district court sentenced Foster to a period of 10 to 16 years' imprisonment, with a mandatory minimum of 5 years' imprisonment as required by statute. This appeal followed.

## III. ASSIGNMENTS OF ERROR

Foster assigns that the district court erred in overruling her motion to suppress evidence and in imposing an excessive sentence.

## IV. ANALYSIS

### 1. MOTION TO SUPPRESS

Foster first asserts that the district court erred in overruling her motion to suppress. She argues that the traffic stop and the ensuing investigation violated her right to be free from unreasonable search and seizure.

In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. *State v. Avey*,

288 Neb. 233, 846 N.W.2d 662 (2014). Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination. *Id.*

(a) Validity of Traffic Stop

It is well established that a traffic violation, no matter how minor, creates probable cause to stop the driver of a vehicle. *State v. Au*, 285 Neb. 797, 829 N.W.2d 695 (2013). In determining whether the government's intrusion into a motorist's Fourth Amendment interests was reasonable, the question is not whether the officer issued a citation for a traffic violation or whether the State ultimately proved the violation. *State v. Prescott*, 280 Neb. 96, 784 N.W.2d 873 (2010). Instead, an officer's stop of a vehicle is objectively reasonable when the officer has probable cause to believe that a traffic violation has occurred. *Id.*

Here, Officer Howton testified that he observed the Navigator make a right-hand turn from East 9th Street onto 13th Avenue without signaling. This was a violation of Neb. Rev. Stat. § 60-6,161 (Reissue 2010), which states: "No person shall turn a vehicle or move right or left upon a roadway . . . without giving an appropriate signal in the manner provided in sections 60-6,162 and 60-6,163." Because Venzor committed a traffic violation, Officer Howton had probable cause to stop the Navigator.

Foster argues that the use of a turn signal was not required under these circumstances because there was only one possible course of travel due to barricades that prevented traffic from proceeding in any other direction. We disagree. The evidence presented at the suppression hearing showed that there was no outlet to the north or to the east and that once the Navigator reached the end of East 9th Street, the only possible course of travel was to turn south onto 13th Avenue. However, we do not believe that this relieved Venzor of her duty to signal before executing the turn. Section 60-6,161 plainly requires the use of an appropriate signal before turning a vehicle upon a roadway and provides no exceptions based on the configuration of the intersection. The Nebraska Rules of the Road shall be applicable and uniform throughout the State. Neb. Rev. Stat. § 60-6,108 (Reissue 2010). Foster has not pointed to any exceptions to the statute that would be applicable under these circumstances, nor have we discovered any such exceptions in our research.

We are similarly unpersuaded by Foster's argument that the Navigator was merely following the "curve" of the roadway and was not executing a turn. The word "turn" is not defined in the Nebraska Rules of the Road. Absent a statutory indication to the contrary, words in a statute will be given their ordinary meaning. *State v. Au*, 285 Neb. 797, 829 N.W.2d 695 (2013). We agree with the district court's conclusion that the ordinary meaning of "turn" in this context is to "take a new direction" or "to change directions." The Navigator was traveling east on East 9th Street, and then turned approximately 90 degrees to travel south on 13th Avenue. We find that this constituted a "turn," as that word is ordinarily and commonly understood, and thus required an appropriate turn signal.

Finally, Foster argues that the turn signal violation was merely a pretext to allow the officers to investigate the information they had received from an unreliable informant. This argument has no merit. As long as a traffic violation occurred, any purported ulterior motive for

the stop is irrelevant. *State v. Nolan*, 283 Neb. 50, 807 N.W.2d 520 (2012). Because the traffic stop was legally justified based on the turn signal violation, we make no comment on whether the informant's report alone would have provided reasonable suspicion for the stop.

### (b) Subsequent Investigation, Search, and Arrest

Foster seems to further argue on appeal that her motion to suppress should have been granted because the scope of the investigation was unlawfully expanded from the purpose of the traffic stop, her consent to search was not voluntarily given, and she was arrested without probable cause. We decline to address these arguments on appeal because they were not presented to the trial court.

During the consolidated suppression hearing, the district court asked counsel for both defendants to clarify the issues raised by their respective motions to suppress. The only issues identified by counsel were the validity of the traffic stop and whether any statements were obtained in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). Foster did not challenge the expansion of the stop, the voluntariness of her consent, or the existence of probable cause for her arrest in the district court. Accordingly, the district court's order did not address those issues.

In appellate proceedings, the examination by the appellate court is confined to questions which have been determined by the trial court. *State v. Dean*, 270 Neb. 972, 708 N.W.2d 640 (2006). An issue not presented to or decided on by the trial court is not an appropriate issue for consideration on appeal. *State v. Kibbee*, 284 Neb. 72, 815 N.W.2d 872 (2012). Because these issues were not presented to or decided by the trial court, we will not consider them on appeal.

### (c) Pre-*Miranda* Statements

Foster claims that the statements she made at the site of the stop should have been excluded because she had not yet been given *Miranda* warnings. Although Foster raised this as a basis for exclusion of her statements in her motion to suppress, we note that the trial court did not address these statements in its order denying the motion to suppress. We also note, however, that Foster did not object to the admission of these statements at trial by renewing her motion to suppress or by objecting on the basis of a *Miranda* violation. Rather, she was granted a continuing objection on the basis of an "improper stop." We find that this objection did not properly preserve her objection to the admission of her statement on the basis of *Miranda*.

In a criminal trial, after an order overruling a defendant's motion to suppress evidence, the defendant must perform the additional procedural step of objecting at trial to the admission of the evidence which was the subject of the suppression motion in order to preserve the question of admissibility for appeal. *State v. Rodgers*, 237 Neb. 506, 466 N.W.2d 537 (1991). Furthermore, the defendant may not assert a different ground for her objection to the admission of evidence on appeal than was offered to the trier of fact. *State. v. Jensen*, 238 Neb. 801, 472 N.W.2d 423 (1991). Although Foster objected at trial to the admission of her statement, she did so on the basis that the stop was improper, not on the basis that she was not given *Miranda* warnings; therefore, the issue of whether the statement was properly admitted under this analysis is not properly before us.

## 2. EXCESSIVE SENTENCE

Foster asserts that the sentence imposed by the district court is excessive and constitutes an abuse of discretion. She argues that the district court failed to consider various mitigating factors when imposing her sentence. We find no merit in this argument.

Foster was convicted of a Class IC felony, punishable by a mandatory minimum of 5 years' imprisonment and a maximum of 50 years' imprisonment. Neb. Rev. Stat. § 28-105 (Cum. Supp. 2012). Foster's sentence of 10 to 16 years' imprisonment is well within the statutory limits for this offense. Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Dinslage*, 280 Neb. 659, 789 N.W.2d 29 (2010).

When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the violence involved in the commission of the crime. *Id.* But the appropriateness of a sentence is necessarily a subjective judgment that includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

The district court specifically stated that it reviewed the presentence report and considered the appropriate factors in imposing Foster's sentence. We cannot say that the district court abused its discretion by imposing a sentence well within the statutory range.

## V. CONCLUSION

For the reasons discussed above, we affirm Foster's conviction and sentence.

AFFIRMED.