IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. THAYER

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

RAY L. THAYER, APPELLANT.

Filed November 24, 2015.    No. A-15-427.

Appeal from the District Court for Scotts Bluff County, LEO DOBROVOLNY, Judge, on appeal thereto from the County Court for Scotts Bluff County, KRISTEN D. MICKEY, Judge. Judgment of District Court affirmed.

Todd D. Morten, Deputy Scotts Bluff County Public Defender, for appellant.

Douglas J. Peterson, Attorney General, and Kimberly A. Klein for appellee.

MOORE, Chief Judge, and IRWIN and INBODY, Judges.

MOORE, Chief Judge.

INTRODUCTION

Ray L. Thayer appeals from the order of the district court for Scotts Bluff County, which affirmed his conviction and sentence in the county court for driving under the influence (DUI), first offense. Because we find that there was reasonable suspicion to believe that Thayer was driving while under the influence of alcohol, the expansion of his traffic stop was lawful, and his motion to suppress evidence was properly denied. We affirm.

BACKGROUND

*Complaint*.

On July 31, 2014, the State filed a complaint in the county court, charging Thayer with one count of DUI, first offense, in violation of Neb. Rev. Stat. § 60-6,196 (Reissue 2010), a Class W

misdemeanor. The State alleged that on July 2, Thayer operated a motor vehicle while under the influence of alcoholic liquor.

*Motion to Suppress.*

Thayer filed a motion to suppress on August 20, 2014, alleging that his seizure and arrest was not based on probable cause that a crime had been committed or was about to be committed and thus violated his Constitutional rights.

The county court heard Thayer's motion to suppress on September 26, 2014. Trooper Courtney Horak with the Nebraska State Patrol testified that she initiated a traffic stop of Thayer on July 2, 2014 at about 6:30 p.m. for driving 81 m.p.h., 26 m.p.h. over the posted limit of 55 m.p.h. A DVD containing a recording of the traffic stop and contact between Horak and Thayer was received in evidence. Upon making contact with Thayer, Horak asked Thayer if he had any reason for the speed, and he said "no, not really." Horak asked Thayer for his license, registration and insurance. Horak had to ask Thayer a second time for his insurance card. Horak also asked Thayer if he had been drinking, and Thayer replied that he had a beer at his friend's house. Horak testified that, in her training and experience, excessive speed is sometimes an indication of alcohol impairment. After Thayer admitted he had been drinking, she considered that as a possible explanation for speeding. According to Horak, drivers who admit to drinking sometimes downplay the quantity of alcohol they have consumed.

Horak informed Thayer he was getting a ticket for speeding, and she returned to her patrol car to check Thayer's license status, which was valid. Horak then returned to Thayer's vehicle and said, "Mr. Thayer, I'm going to have you jump out. I just wanna check your eyes real quick, make sure you're good to go, okay?" Thayer responded, "All right," and got out of his pickup. Horak then told him, "You're talking to me just fine but I want to be able to say for sure when I kick you loose that you're good to go." Thayer complied with Horak's request. Horak testified that she asked Thayer to exit his vehicle to do other testing because he admitted to her that he had been drinking. According to Horak, when she returned to Thayer's vehicle after checking his license status, he was not free to leave because she had not yet issued him a citation.

Horak directed Thayer to take a seat on the front bumper of her vehicle, and she performed the horizontal gaze nystagmus (HGN) test. After performing the test, Horak asked Thayer if he would mind taking a preliminary breath test (PBT), and he assented. Horak had Thayer sit in the front passenger side of her vehicle, and they chatted while waiting for the requisite time to pass. At some point while they waited, Thayer stated that he had had 3 beers in about 35 minutes. After the PBT, Horak told Thayer he was at the legal limit of .08.

On cross-examination, Horak acknowledged that excessive speed is not specifically listed in the National Highway Traffic Safety Administration (NHTSA) manual as an indicator of impaired driving.

Thayer testified at the suppression hearing about Horak's request for him to exit his vehicle so she could check his eyes. He stated that he viewed the request as a command to get out of his pickup and did not feel that he was free to refuse the request, take his ticket, and leave.

*County Court Ruling on Motion to Suppress.*

The county court denied the motion to suppress. The court concluded that Thayer's commission of a traffic violation by speeding 26 m.p.h. over the speed limit down a two-lane county road and his admission to drinking alcohol "at a minimum within that same day and [the court thought] more likely within the short period before being stopped," gave Horak a legitimate reason to check Thayer before allowing him to continue driving. Accordingly, the court denied Thayer's motion.

*County Court Trial.*

Thayer waived a jury trial. At the start of the bench trial, Thayer's counsel renewed the motion to suppress and asked the court to take judicial notice of the previously filed motion. The county court took judicial notice of the motion and its ruling and overruled Thayer's renewal of the motion.

Horak testified about the reason for the traffic stop of Thayer and his response when she asked if he had been drinking that day, which testimony was consistent with the testimony she gave at the suppression hearing. Horak testified that the HGN test was the only field sobriety test she performed because of Thayer's age and medical issues, but no further evidence was given concerning the nature of the medical issues. Horak further testified that when Thayer was seated in the patrol car, Horak could smell the odor of an alcoholic beverage coming from him. Following the receipt of the PBT result, Thayer agreed to a chemical test of his blood, and Horak transported him to the hospital where his blood was drawn.

The registered nurse who performed the "legal blood draw" on Thayer, using the kit provided to him by Horak, testified that he drew Thayer's blood using the proper protocols.

The forensic scientist who tested Thayer's blood testified about the procedures she used in running Thayer's blood sample through a gas chromatograph machine. The machine produced a written result of .103 gram of alcohol per 100 milliliters of blood. The scientist's testimony about Thayer's test results and copies of the blood alcohol report form were received into evidence without any renewed objection by Thayer, although the court allowed Thayer to interpose a late objection to the blood alcohol report form, which objection the court overruled.

The county court found that the State had proven every element of the charges beyond a reasonable doubt and found Thayer guilty of DUI, first offense. The court sentenced Thayer to probation for 9 months, ordered him to pay a $500 fine, revoked his driver's license for 60 days, and found that he would be eligible for an interlock permit.

*Appeal to District Court.*

Thayer appealed his conviction and sentence to the district court, asserting that the county court erred in not sustaining his motion to suppress and in admitting evidence of his BAC at trial. On April 29, 2015, the district court entered an order, affirming Thayer's conviction and sentence. It found no clear error in the county court's finding of historical fact, and found, de novo, that Horak had reasonable suspicion following the traffic stop to investigate further for DUI, and affirmed the county court's judgment in all respects.

ASSIGNMENT OF ERROR

Thayer asserts that the district court erred in finding that Horak had a reasonable suspicion to expand the scope of the stop and order Thayer out of his vehicle.

STANDARD OF REVIEW

When deciding appeals from criminal convictions in county court, an appellate court applies the same standards of review that an appellate court applies to decide appeals from criminal convictions in district court. *State v. Avey*, 288 Neb. 233, 846 N.W.2d 662 (2014).

In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. *State v. Piper*, 289 Neb. 364, 855 N.W.2d 1 (2014). Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination. *Id*.

ANALYSIS

Thayer asserts that the district court erred in finding that Horak had a reasonable suspicion to expand the scope of the stop and order Thayer out of his vehicle.

Thayer does not contest the initial stop of his vehicle, nor could he do so. He was stopped for speeding, and a traffic violation, no matter how minor, creates probable cause to stop the driver of a vehicle. *State v. Au*, 285 Neb. 797, 829 N.W.2d 695 (2013). Once a vehicle is lawfully stopped, a law enforcement officer may conduct an investigation reasonably related in scope to the circumstances that justified the traffic stop. *State v. Nelson*, 282 Neb. 767, 807 N.W.2d 769 (2011). This investigation may include asking the driver for an operator's license and registration, requesting that the driver sit in the patrol car, and asking the driver about the purpose and destination of his or her travel. *Id.* Also, the officer may run a computer check to determine whether the vehicle involved in the stop has been stolen and whether there are any outstanding warrants for any of its occupants. *Id.*

The question presented in this appeal is whether, based on the totality of the circumstances, Horak's request for Thayer to exit his vehicle before she issued the speeding citation so she could perform a field sobriety test, was supported by a reasonable, articulable suspicion that Thayer was under the influence of alcohol. An officer is required to have only a reasonable, articulable suspicion that a motorist was driving under the influence in order to expand the scope of the initial traffic stop and detain him or her for field sobriety tests. *State v. Lamb, supra.* Reasonable suspicion entails some minimal level of objective justification for detention, something more than an inchoate and unparticularized hunch, but less than the level of suspicion required for probable cause. *State v. Au, supra.* Whether a police officer has a reasonable suspicion based on sufficient articulable facts depends on the totality of the circumstances and must be determined on a case-by-case basis. *State v. Wells*, 290 Neb. 186, 859 N.W.2d 316 (2015).

Thayer argues that his traffic violation alone is not evidence of impairment and argues further that his admission to having consumed one beer, without more, did not furnish reasonable suspicion that he was impaired.

Prior to expanding the traffic stop into a DUI investigation, Horak knew that Thayer was traveling at a very excessive speed: 81 m.p.h., which was 26 m.p.h. over the posted speed limit. When she made contact with Thayer, she asked if he had had anything to drink that day, and Thayer admitted to having consumed one beer at a friend's house. Horak had to repeat her request for Thayer's insurance card. However, Horak did not observe any difficulty in Thayer's speech, an observation confirmed by this court's review of the video. It was not until after Horak administered the HGN test and Thayer was seated in the patrol car awaiting the PBT that Horak detected an order of alcohol and Thayer admitted to drinking three beers in about 35 minutes. Accordingly, we do not include these factors in our consideration of evidence supporting Horak's reasonable suspicion. See *State v. Kellogg*, 22 Neb. App. 638, 859 N.W.2d 355, (2015) (not considering trooper's observation of driver's bloodshot eyes where there was no evidence that trooper made observation prior to administering field sobriety tests).

Horak testified, based on her training and experience, that excessive speed is sometimes an indicator of impairment and traffic violations are "one piece of the pie," in evaluating possible impairment. While Thayer initially admitted to only having consumed one beer, Horak testified that drivers sometimes downplay the amount of alcohol they have consumed. After Thayer admitted he had been drinking, Horak considered this as a possible explanation for his excessive speed. Because of Thayer's admission that he had been drinking, Horak determined that further investigation was warranted.

Upon our de novo review, we conclude that the facts in this case were sufficient, when viewed in their totality, to support a finding that Horak had reasonable, articulable suspicion to justify the expansion of the traffic stop and continue to detain Thayer for further investigation into the possibility that he was driving under the influence of alcohol. These articulable facts included Thayer's excessive speed without explanation, Thayer's admission to consuming alcohol, and Horak's belief, based upon her training, that drivers sometimes downplay the amount of alcohol they have consumed and alcohol consumption can possibly explain excessive speed.

The county court did not err in overruling Thayer's motion to suppress, and the district court did not err in affirming the judgment of the county court.

## CONCLUSION

Because there was reasonable suspicion to believe that Thayer was driving while under the influence of alcohol, the expansion of his traffic stop was lawful, and his motion to suppress evidence was properly denied. The district court did not err in affirming the judgment of the county court.

AFFIRMED.